# In the United States Court of Federal Claims

No. 06-629T
(Filed July 10, 2007)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **PETER J. and JEANNE LOCKE,** | * | Tax; wrongful levy; full- |
| | * | payment rule; jurisdiction; |
| Plaintiffs, | * | responsible advocacy. |
| | * | |
| v. | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

Jeffrey D. Moffatt, Lancaster, CA, for plaintiffs.

Joseph B. Syverson, Washington, DC, with whom was Assistant Attorney Eileen J. O'Connor, for defendant.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court after briefing on defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. Defendant challenges jurisdiction over a claim for damages based on a wrongful tax levy. Argument is deemed unnecessary.

## BACKGROUND

As an initial matter, the court is compelled to point out that the pleading and brief filed by plaintiffs' counsel were deficient in almost every respect. Some egregious errors include incorrect case citations; case names without any citations; statutes that have either been repealed or never existed; unclear and confusing facts purporting to support plaintiffs' claims; and arguments based entirely on conjecture. Relying principally on defendant's

Exhibit
A

motion to dismiss, and only partially on plaintiffs' complaint, see RCFC 8(a), 1/ and their response to defendant's motion, the court was able to piece together sufficient relevant facts to address the jurisdictional adequacy of the complaint.

**FACTS**

Plaintiffs jointly filed their 1994 and 1997 tax returns on October 2, 1998. 2/ Plaintiffs' 1994 tax return reported a total tax due of $9,929.00; plaintiffs' 1997 tax return reported a total tax due of $7,965.00. Plaintiffs did not make any payments on either their 1994 or 1997 income tax returns. On November 16, 1998, the Internal Revenue Service (the "IRS") assessed plaintiffs $17,150.03—including penalties and interest—in total outstanding income tax liability for the 1994 tax year. On November 9, 1998, the IRS assessed plaintiffs with $8,707.25 in total outstanding income tax liability for the 1997 tax year. The IRS subsequently abated both assessments. As a result, plaintiffs' outstanding income tax liabilities were lowered to $16,618.56 for the 1994 tax year and to $5,177.48 for the 1997 tax year.

As a result of plaintiffs' outstanding tax liabilities for tax years 1994 and 1997, the IRS sent plaintiffs on February 9, 2004, notices of intent to levy. On July 26, 2004, the IRS again sent plaintiffs' notices of intent to levy for tax year 2002. On August 25, 2004, plaintiffs' counsel sent the IRS a Form 12153 (Request for a Collection Due Process

---

1/ Rule 8(a) provides, in relevant part:

> (a) **Claims for relief**. A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . .

2/ Although plaintiffs' complaint alleges a "wrongful levy by the [Internal Revenue Service]," Compl. filed Sept. 7, 2006, ¶ 1, it fails to identify, *inter alia*, the tax year or years involved in the suit. Page one of defendant's Motion To Dismiss noted this omission. Nevertheless, nowhere in their twenty-two page reply do plaintiffs identify the tax years relevant to their suit. Because IRS records attached to defendant's motion show that plaintiffs' payments on the levies were applied to unpaid tax liabilities for tax years 1994 and 1997, the court deduces that these are the only tax years relevant to plaintiffs' case. See Def.'s Br. filed Jan. 5, 2007, at 1 n.1.

Hearing), 3/ for tax years 1990 through 1993 and 1997. "Per plaintiffs' counsel's instructions, the IRS treated this request as a request for a hearing with respect to plaintiffs' 1994 and 2002 tax years as well." Def.'s Br. filed Jan. 5, 2007, at 2. Plaintiffs' request was timely only with respect to tax year 2002. However, the IRS determined that plaintiffs were entitled to an "equivalent hearing" for their untimely requests. I.R.S. Appeals Transmittal and Case Memorandum (Dec. 15, 2004), at 1; DX 11. While attempting to schedule the hearing, the IRS advised plaintiffs that at the hearing they could request an alternative to the proposed levy with the IRS Appeals Office. See I.R.C. § 6330(c)(2)(A), ("The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including . . . offers of collection alternatives . . . ."). Plaintiffs' counsel later notified the IRS that both a "penalty abatement request . . . and an Offer In Compromise, based on doubt as to liability" had been submitted prior to the request for a collection due process hearing. I.R.S. Appeals Transmittal and Case Memorandum (Dec. 15, 2004), at 3; DX 11. Plaintiffs' counsel requested that the appeal be conducted by mail. Plaintiffs' counsel did not propose any collection alternative.

An IRS Appeals Officer responded in a letter to plaintiffs dated November 3, 2004. The letter advised that, if plaintiffs still wished to proceed with the collection due process hearing, they were required to submit a proposed alternative to the levy action or to submit a written withdrawal of their request for the collection due process hearing "within two weeks of the date of this letter." I.R.S. Appeals Transmittal and Case Memorandum (Dec. 15, 2004), at 3. The Appeals Officer explained to plaintiffs the importance of proposed collection alternatives to their case:

> [I]t is imperative I be informed as to how you wish to proceed with the disposition of your Collection Due Process Case(s).
>
> . . . .
>
> If I have not received a response as to how you wish to proceed . . . I will have no choice but to presume you do not wish to propose an alternative to the proposed levy action other than those already under consideration, and do not wish to withdraw your request for a Collection Due Process Hearing.

---

3/ I.R.C. § 6330(a)(3)(B) establishes that plaintiffs have "the right . . . to request a hearing during [30 days before the date of the first levy]." Id. The hearing is an opportunity for plaintiffs to request an alternative to the levy.

Case 1:06-cv-00629-CFM Document 21 Filed 07/10/2007 Page 4 of 15

Id. at 3-4. Although on November 16, 2004, plaintiffs' counsel informed the Appeals Officer that plaintiffs would submit a withdrawal of their request for a collection due process hearing by no later than November 26, 2004, counsel failed to submit the request. On December 1, 2004, the Appeals Officer gave plaintiffs a third opportunity to respond by letter. Plaintiffs again failed to respond. The Appeals Officer then reviewed plaintiffs' file and concluded that the proposed levy should be sustained. On January 29, 2005, the Appeals Office issued a notice of determination for the 2002 tax year. On May 5, 2005, it issued decision letters for the 1994 and 1997 tax years.

Shortly thereafter, the IRS began to levy plaintiffs' social security benefits pursuant to I.R.C. § 6331(h) 4/ in order to satisfy their unpaid tax liabilities for tax years 1994 and 1997. On May 15, 2006, and July 3, 2006, the IRS mailed plaintiffs Final Notices Before Levy on Social Security Benefits for the 1994 tax year. On June 26, 2006, Final Notices Before Levy on Social Security Benefits were sent for the 1997 tax year. On August 9, 2006, plaintiffs' social security benefits were levied in the amount of $184.80. On September 1, 2006, plaintiffs' benefits were levied in the amount of $81.00. These levies were credited against plaintiffs' 1994 tax liability. On September 13, 2006, plaintiffs' social security benefits were again levied in the amount of $184.80 and credited to their 1997 tax liability. Plaintiffs filed their complaint in the United States Court of Federal Claims on September 7, 2006.

---

4/ I.R.C. § 6331(a) provides, in pertinent part:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary [of the Treasury] to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person . . . .

I.R.C. § 6331(h) further provides:

> (1) In general.—If the Secretary approves a levy under this subsection, the effect of a levy on specified payments to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released.
>
> (2) Specified payment.—For the purposes of paragraph (1), the term "specified payment" means— (A) any Federal payment other than a payment for which eligibility is based on the income or assets (or both) of a payee . . . .

## DISCUSSION

1. Standard of review

Defendant invokes RCFC 12(b)(1) to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. The court must accept as true the facts alleged in the complaint, and must construe such facts in the light most favorable to the pleader. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (holding that courts are obligated "to draw all reasonable inferences in plaintiff's favor"). Nevertheless, if the jurisdictional facts alleged in the complaint are disputed, "the . . . court may consider relevant evidence in order to resolve the factual dispute." Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); see also Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (holding that "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged").

"It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Testan, 424 U.S. 392, 399 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). "[I]t has been said, in a Court of Claims context, that a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" Id. (quoting United States v. King, 395 U.S. 1, 4 (1969)). Additionally, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996); see also United States v. Williams, 514 U.S. 527, 531 (1995) ("[B]ecause a waiver of sovereign immunity must be 'unequivocally expressed,' any ambiguity is construed in favor of immunity." (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992)); United States v. Mitchell, 445 U.S. 535, 538 (1980) ("In the absence of clear congressional consent, then, 'there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States.'" (quoting Sherwood, 312 U.S. at 587-88)).

2. Subject matter jurisdiction

Jurisdiction must be established before the court may proceed to the merits of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998). Any party may challenge, or the court may raise *sua sponte*, subject matter jurisdiction at any point in a proceeding, even upon appeal. Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). Once

the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds, 846 F.2d at 748; McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). Federal courts are presumed to lack jurisdiction unless the record affirmatively indicates the opposite. Renne v. Geary, 501 U.S. 312, 316 (1991).

Both the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), and the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (2000), define the jurisdictional reach of the Court of Federal Claims. The Tucker Act "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc); see also Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 211, 220, aff'd, 264 F.3d 1071, 1080 (Fed. Cir. 2001) (ruling United States Postal Service to be "federal agency" within meaning of Administrative Disputes Resolution Act, and, thus, jurisdiction over it exists under Tucker Act). In certain actions against the United States for less than $10,000.00, the Little Tucker Act grants concurrent jurisdiction to United States district courts and the Court of Federal Claims. See 28 U.S.C. § 1346(a)(2).

In Fisher the United States Court of Appeals for the Federal Circuit sought to clarify Tucker Act jurisprudence, which had blended the questions of the Court of Federal Claims' jurisdictional grant with the merits of the claim. "This mixture has been a source of confusion for litigants and a struggle for courts." 402 F.3d at 1172. As the Federal Circuit elucidated, the Tucker Act does not provide any substantive causes of action. "[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Id.; see also United States v. Mitchell, 463 U.S. 206, 216 (1983).

The Federal Circuit adopted a single-step approach to addressing whether a constitutional provision, statute, or regulation is money-mandating and, therefore, within the jurisdiction of the Court of Federal Claims:

> When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, . . . the trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte*[,] . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating.

> If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. . . .
>
> If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act.

Fisher, 402 F.3d at 1173; see also Greenlee County v. United States, No. 2006-5053, 2007 WL 1391389, at *4 (Fed. Cir. May 14, 2007) ("Only after this initial inquiry is completed and the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case . . . .").

Similarly, while the Little Tucker Act waives the Government's sovereign immunity, it affords no substantive right enforceable against the United States for money damages. See Litzenberger v. United States, 89 F.3d 818, 820 (Fed. Cir. 1996) (citing Mitchell, 463 U.S. at 216-17); Trayco, Inc. v. United States, 994 F.2d 832, 838 (Fed. Cir. 1993) (finding that plaintiff "met the jurisdictional prerequisites of section 1346(a)(2) and alleged a substantive right against the United States for money damages"). "Thus, for a claim to be based on the Little Tucker Act, it must be founded on a provision that can fairly be interpreted as mandating compensation from the United States." Litzenberger, 89 F.3d at 820.

3. Plaintiffs' claims

Among their claims plaintiffs allege wrongful levy by the IRS. They request a refund of the levied sums, plus interest. Plaintiffs further aver that the levy violated their due process rights under the Fourteenth and Fifth Amendments of the United States Constitution and that the levies constitute an unlawful taking of their property. Defendant puts at issue subject matter jurisdiction over plaintiffs' wrongful levy and constitutional claims.

1) Third-party nontaxpayers

Plaintiffs base subject matter jurisdiction on I.R.C. § 7426, 5/ which allows a party other than the taxpayer generating the levy to challenge it. They argue that two cases recognize that section 7426 vests subject matter jurisdiction concurrently in the district courts and in the Court of Federal Claims. Plaintiffs chiefly rely on Gordon v. United States, 649 F.2d 837, 843 (Ct. Cl. 1981) ("Congress did not intend I.R.C. § 7426 to withdraw Tucker Act jurisdiction of third-party levy contests from this court."). Plaintiffs also cite to Document Management Group, Inc. v. United States, 11 Cl. Ct. 463, 465 (1987) (holding that third-party nontaxpayer may seek relief for taxes paid on behalf of another under Court of Federal Claims' implied-in-fact contract jurisdiction). Neither of these cases is applicable to plaintiffs' claims. At issue in both Gordon and Document Management Group was whether section 7426(a)(1) grants Tucker Act jurisdiction to the Court of Federal Claims to hear tax levy and refund claims brought by a third party. These cases confirm that the statute limits wrongful levy jurisdiction only to claims brought by third parties seeking to recover money or property that was levied in order to satisfy the tax liabilities of others. See I.R.C. § 7426(a)(1) ("[A]ny person (other than the person against whom is assessed the tax out of which such levy arose) . . . ."). Plaintiffs in the case at bar were not subject to a levy in order to satisfy a third party's tax liability. Rather, the levy was imposed to satisfy their own outstanding tax liabilities.

Plaintiffs attempt to circumvent the unmalleable fact that they are not third-party nontaxpayers by contending that, had their offer in compromise been considered by the IRS, it would have been accepted. If plaintiffs' tax liability had been resolved, so their reasoning goes, Mrs. Locke would be a third party. Thus, because Mrs. Locke is still subject to the levy, plaintiffs view themselves as third-party nontaxpayers and subject to the court's wrongful levy jurisdiction under Gordon. 6/ Defendant aptly characterizes this argument

---

5/ I.R.C. § 7426(a)(1) provides, in relevant part:

> If a levy has been made on property . . . , any person (*other than the person against whom is assessed the tax out of which such levy arose*) who claims an interest in . . . such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

(Emphasis added.)

6/ Plaintiffs also cite to United States v. Williams, 514 U.S. 527 (1995), in support of their claim that Mrs. Locke is a third-party nontaxpayer. The issue in Williams was

as a "resounding *non sequitur*." Def.'s Br. filed Apr. 19, 2007, at 6. Even if the IRS had accepted plaintiffs' offer in compromise, neither Mr. nor Mrs. Locke would have been rendered a third-party nontaxpayer with respect to the levied funds. The IRS imposed a levy on plaintiffs in order to satisfy the outstanding tax liabilities from their joint federal income tax returns. Moreover, each plaintiff has joint and several liability for the outstanding tax liability ascribed to both returns. See I.R.C. § 6013(d)(3) ("[I]f a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."). The court admonishes plaintiffs' counsel for submitting arguments based on inapplicable authority, while ignoring controlling precedent. As the late Chief Judge Markey wisely cautioned, such arguments "walk[] on the razor's edge of frivolity." Lindemannn Maschinenfabrik GmbH v. American Host & Derrick Co., 895 F.2d 1403, 1406 (Fed. Cir. 1990). Because plaintiffs are not third-party nontaxpayers, the Court of Federal Claims lacks subject matter jurisdiction pursuant to I.R.C. § 7426.

2) Jurisdiction under the Little Tucker Act

Plaintiffs next place subject matter jurisdiction on the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Plaintiffs claim that the Little Tucker Act grants jurisdiction because "the present levied amount is less than $10,000[], relating to the jurisdiction of the Court of Claims in wrongful levy suits." Pls.' Br. filed Apr. 5, 2007, at 12. However, the Little Tucker Act, standing alone, does not create a right to money damages. See Litzenberger, 89 F.3d at 820. Because plaintiffs fail to identify any statute or regulation mandating a right to compensation by the United States, the requisite subject matter jurisdiction has not been established. See id.

3) Plaintiffs' claims for interest on overpayment through levy

Plaintiffs attempt to create subject matter jurisdiction by citing to Citadel Industries Inc., v. United States, 314 F. Supp. 245 (S.D.N.Y. 1970). "In Citadel Industries Inc. v. United States, the Court of Federal Claims assumed subject matter jurisdiction for interest alone. Petitioner [sic] believes that also under Citadel, this court has jurisdiction." Compl. ¶ 6. It should have been apparent to plaintiffs' counsel from the case citation that the court

---

6/ (Cont'd from page 8.)

whether a plaintiff had standing to bring a refund action when she paid a tax that was assessed against a third party in order to remove a lien on her property. See 514 U.S. at 529. Like both Gordon and Document Management Group, this case has no bearing on the present case.

in Citadel Industries was the United States District Court for the Southern District of New York, not the Court of Federal Claims. Second, the first line of Judge Weinfeld's opinion establishes that subject matter jurisdiction was never an issue in Citadel Industries. See 314 F. Supp. at 246 ("Plaintiff moves for summary judgment upon its first cause of action . . . . The government, agreeing . . . that the matter is ripe for summary judgment . . . ."). Finally, even if Citadel Industries were somehow relevant, it would provide no assistance to plaintiffs. Upon the taxpayer's suit to recover interest on an overpayment of income tax, the district court held that "[i]nterest should run in favor of a taxpayer only on that net sum which remains *after it has satisfied all its tax obligations to the government*." Id. at 248 (emphasis added).

Plaintiffs separately assert that they are making a claim for a refund of their levied social security benefits. In accordance with 28 U.S.C. §§ 1346(a)(1), 1491(a)(1), the Court of Federal Claims and the United States district courts possess jurisdiction over tax refund suits. However, "payment of the assessed taxes in full is a prerequisite to bringing a refund claim." Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Flora v. United States, 362 U.S. 145, 177 (1960). To the extent that an action based on wrongful levy might be construed as a refund action, all taxes must be paid in full prior to filing a complaint in the Court of Federal Claims—even if the amount of tax owed is disputed. In this case plaintiffs did not allege that they fully paid their tax liabilities for the tax years in question or counter defendant's assertion to the contrary. See Def.'s Br. filed Jan. 5, 2007, at 8. Accordingly, plaintiffs cannot recover interest on taxes that they have not paid.

4) Jurisdiction under the APA

Plaintiffs predicate jurisdiction on the Administrative Procedure Act, 5 U.S.C. §§ 551-59, 701-06 (2000). Plaintiffs allege that "[t]his Court can review actions of the IRS. .[.] This review may be performed under the standards of the Administrative Procedure Act . . . ." Compl. ¶ 8. This claim runs counter to binding precedent. The Court of Federal Claims lacks jurisdiction over claims for relief pursuant to the APA. See Samish Indian Nation v. United States, 419 F.3d 1355, 1373 (Fed. Cir. 2005); Martinez v. United States, 333 F.3d 1295, 1313 (Fed. Cir. 2003) ("[T]he Court of Federal Claims lacks APA jurisdiction . . . ." (citing Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993))); Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997). Plaintiffs erroneously contend that Fisher v. United States, 402 F.3d 1167, 1186 (Fed. Cir. 2005) (en banc) (Plager, Newman, & Gajarsa, JJ., additional views), establishes APA jurisdiction in the Court of Federal Claims. The lengthy quotation from Fisher that plaintiffs' counsel provides is an additional view and not part of the Federal Circuit's en banc decision. As such, it is not binding on the Court of Federal Claims. 7/

---

7/ The court reminds plaintiffs' counsel that *dicta*, concurring opinions, and dissents, while at times persuasive, are never considered precedent.

Assuming, *arguendo,* that the Court of Federal Claims possesses general subject matter jurisdiction under the APA, the denial of plaintiffs' offer in compromise is not reviewable. The Secretary of the Treasury is granted authority to enter into a offer in compromise pursuant to I.R.C. § 7122(a). Section 7122(a) provides, in pertinent part, that "[t]he Secretary *may* compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense . . . ." Id. (emphasis added). In Barlow v. Collins, 397 U.S. 159 (1970), the Supreme Court analyzed judicial review under the APA. The Court held that "'judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.' A clear command of the statute will preclude review." Id. at 166-67 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967). The APA expressly excludes judicial review of agency actions when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Because the Treasury Secretary's authority to enter into a offer in compromise is discretionary, a denial of an offer in compromise is not reviewable under the APA. See Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006) ("There is a presumption that the use of the word 'may' in a statute creates discretion."); McBryde v. United States, 299 F.3d 1357, 1362 (Fed. Cir. 2002).

5) Whether I.R.C. § 7433 is money-mandating

Plaintiffs next argue that jurisdiction is present because the levies constitute an "unauthorized collection action" pursuant to I.R.C. § 7433. 8/ Pls.' Br. filed Apr. 5, 2007, at 10. However, section 7433(a) mandates that such claims be brought exclusively in a district court of the United States. See I.R.C. § 7433(a); see Ledford, 297 F.3d at 1382

---

8/ The relevant text of section 7433(a) provides:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States *in a district court of the United States*. Except as provided in section 7432, such civil action shall be the *exclusive remedy* for recovering damages resulting from such actions.

(Emphasis added.)

(holding that "[t]he Court of Federal Claims is not a district court of the United States, and therefore it lacks subject matter jurisdiction" to hear section 7433(a) claims).

Not to be deterred by statute, binding precedent, or logic, plaintiffs contend that section 7433 "creates a money mandating requirement" under the Supreme Court's interpretation of the Tucker Act in United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003). Pls.' Br. filed Apr. 5, 2007, at 15-16. Section 7433, according to plaintiffs, creates the requisite entitlement by increasing the maximum amount of damages available for unlawful collections. First, the fact that Congress increased an existing award from $100,000.00 to $1,000,000.00 cannot transform the statute to one that mandates the payment of money under the Tucker Act. See Taxpayer Bill of Rights 2, Pub. L. No. 104-168, § 801(a), 110 Stat. 1452, 1465 (1996) (codified at I.R.C. § 7433(b)).

Second, this argument is defeated by section 7433(b)'s plain language, which provides for damages only in actions brought under section 7433(a). See I.R.C. § 7433(b) ("In any action brought under subsection (a) . . . ."). Because section 7433(a) grants jurisdiction exclusively to federal district courts, the Court of Federal Claims would not have jurisdiction even if section 7433(b) were a money-mandating statute. See I.R.C. § 7433(a).

6) Whether the Court of Federal Claims has general jurisdiction over equitable matters in tax cases

Pride in crafting legal arguments takes a holiday when plaintiffs argue that this court may grant "[e]quitable and extraordinary relief . . . after the amending of the Tucker Act." Pls.' Br. filed Apr. 5, 2007, at 16. Plaintiffs proceed to quote the holding in United Sales, Inc. v. United States, 34 Fed. Cl. 88, 94 (1995) (quoting 28 U.S.C. § 1491(a)(3) (1995)). Had plaintiffs' counsel consulted the cited statutory provision, he might have noticed that it was repealed by Congress in 1996. See Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a)(2), 110 Stat. 3870, 3874 (1996) (repealing 28 U.S.C. § 1491(a)(3)). Moreover, plaintiffs' counsel may not have appreciated the import of the language that he quotes:

> In 1988 . . . the Tucker Act was amended, conferring limited declaratory judgment authority on this court over *nonmonetary disputes*. The amendment provides in pertinent part:
>
> > "(3) To afford complete relief on any *contract claim* brought before *the contract* is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including . . .

injunctive relief. . . . [T]he court shall give due regard to the interests of national defense and national security."

United Sales, 34 Fed. Cl. at 94 (emphasis added).

In his analysis of the holding in United Sales, plaintiffs' counsel ignores the fact that it is applicable only to nonmonetary contract claims. Instead, counsel argues, "[d]efendant being neither national defense or national security arms of the government falls outside the deference protective bubble set forth in Sales . . . . Plaintiff[s] can then, through this court, obtain injunctive relief, as well as equitable and extraordinary relief under the Tucker [A]ct[']s amendment." Pls.' Br. filed Apr. 5, 2007, at 17. The Court of Federal Claims does have limited jurisdiction to grant declaratory and injunctive relief, but only with respect to certain government contract cases. See 28 U.S.C. § 1491(b)(1)-(2). 9/ However, jurisdiction was not afforded to grant declaratory or injunctive relief in tax cases. See id. Because Congress repealed section 1491(a)(3), and because plaintiffs' claims do not involve a government contract, this entire argument is baseless.

7) Plaintiffs' constitutional claims

Plaintiffs have cited to the Due Process Clause of the Fourteenth and Fifth Amendments of the U.S. Constitution as an alternative basis of this court's jurisdiction. The Fourteenth Amendment provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

---

9/ 28 U.S.C. § 1491(b)(1)-(2), provides, in pertinent part:

> [T]]he . . . Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract . . . . [T]he court[] may award any relief that the court considers proper, including declaratory and injunctive relief . . . .

U.S. Const. amend. XIV, § 1. The language of the Fourteenth Amendment does not implicate the activities of the Federal Government, nor does it mandate the payment of monetary damages. Moreover, the Federal Circuit has held that due process claims brought under the Fifth Amendment do not come within the jurisdiction of the Court of Federal Claims. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) ("The Court of Federal Claims correctly concluded that it does not have jurisdiction to hear Crocker's due process or seizure claims under the Fifth Amendment to the United States Constitution." (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995), and Florida Rock Indus., Inc. v. United States, 791 F.2d 893, 898-99 (Fed. Cir. 1986))); see also Collins v. United States, 67 F.3d 284, 288 (Fed. Cir. 1995) ("[T]he trial court did not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause. This is so because the due process clause does not obligate the government to pay money damages."). Thus, plaintiffs' due process claims do not implicate a money-mandating Constitutional provision, as required by Fisher, 402 F.3d at 1172.

With respect to plaintiffs' contention that the levy constitutes an unlawful taking of their property, it is well established that the collection of a tax liability by means of a levy is not a Fifth Amendment taking.

> [T]he principles of takings law that apply to real property do not apply in the same manner to statutes imposing monetary liability. Thus, even though taxes or special municipal assessments indisputably "take" money from individuals or businesses, assessments of that kind are not treated as *per se* takings under the Fifth Amendment.

Branch v. United States, 69 F.3d 1571, 1576 (Fed. Cir. 1995) (citing Houck v. Little River Drainage Dist., 239 U.S. 254, 264-65 (1915)); see also County of Mobile v. Kimball, 102 U.S. 691, 703 (1880) ("But neither is taxation for a public purpose, however great, the taking of private property for public use, in the sense of the Constitution"); Fry v. United States, 72 Fed. Cl. 500, 509 (2006) ("[T]he lawful exercise of the Government's tax collection powers does not amount to a taking.").

Plaintiffs' counsel should consult the Federal Circuit's long list of court filings deemed sanctionable in Abbs v. Principi, 237 F.3d 1342, 1345-46 (Fed. Cir. 2001) (sanctioning appellants' counsel for filing frivolous appeal).

> Where, as here, a party's argument is explicitly negated by the very statute the party relies on in support of its argument, there is, quite simply, absolutely no basis in law for arguing for reversal of the decision appealed. Any argument

made in support of such an appeal is, by its nature, illogical and unreasonable, and therefore, is sanctionable under Fed. R. App. P. 38.

Id. at 1346; see also Ill. Tool Works, Inc., v. Grip-Pak, Inc., 906 F.2d 679, 684 n.5 (Fed. Cir. 1990) ("[I]t is inappropriate to quote mere *language* from a court *opinion*, while disregarding the actual holding of the court and the factual pattern which gave rise to the quoted language."); Lindemannn, 895 F.2d at 1405 (reminding counsel that "one does not persuade by insulting the intelligence of the persuadees"); Beghin-Say Int'l, Inc., v. Ole-Bendt Rasmussen, 733 F.2d 1568, 1573 (Fed. Cir. 1984) ("There are . . . differences between excessive advocacy and inexperience on the one hand and clear frivolity on the other.").

It appears that plaintiffs' counsel repeatedly has filed complaints that raise identical jurisdictional issues. See Def.'s Br. filed Jan. 17, 2007, at 1. With the exception of different plaintiffs and only minor factual differences, these track virtually word-for-word the complaint filed in this action. See id. at DX 1-3; see also, Leshin v. United States, No. 06-637, slip op. at 1 (Fed. Cl. Jan. 11, 2007). This dismissal should signal the last of these actions filed by this attorney in the Court of Federal Claims. See Saladino v. United States, 63 Fed. Cl. 754, 762 (2005) (imposing RCFC 11 sanctions on plaintiff for filing frivolous tax refund suits, including monetary penalty, and barring plaintiff from filing tax refund claims in Court of Federal Claims for ten years).

## CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the complaint pursuant to RCFC 12(b)(1) without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED**.

No costs.

s/ Christine O.C. Miller

---

**Christine Odell Cook Miller**
Judge